Jessica P. Wilde (#11801)
JONES, WALDO, HOLBROOK & McDONOUGH, P.C.
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101
Telephone: (801) 521-3200
*jwilde@joneswaldo.com*

Gwendolyn C. Payton (admitted *pro hac vice*)
KILPATRICK, TOWNSEND & STOCKTON, LLP
1420 Fifth Avenue, Suite 3700
Seattle, Washington 98101
Telephone: (204) 467-9600
*gpayton@kilpatricktownsend.com*

*Attorneys for Defendant Premera Blue Cross*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| LYN M., and DAVID M., as Legal Guardians of L.M., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>PREMERA BLUE CROSS, and MICROSOFT CORPORATION WELFARE PLAN,<br><br>Defendants, | **DEFENDANT PREMERA BLUE CROSS'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:17-cv-01152-BSJ<br><br>Honorable Bruce S. Jenkins |

Pursuant to Federal Rule of Civil Procedure 56, Defendant Premera Blue Cross ("Premera") moves for summary judgment against Lyn M. and David M., as Legal Guardians of L.M. (collectively "Plaintiffs").

## I.      INTRODUCTION

Plaintiffs Lyn M. and David M. seek coverage under an ERISA health benefit plan—2015 Microsoft Health Savings Plan (the "Plan")—for their daughter L.M.'s fourteen-month stay at Eva Carlston Academy, a residential treatment center. The Plan, which is administered by

Premera pursuant to a delegation by the Plan sponsor, Microsoft, denied coverage because residential treatment was not medically necessary under the plan terms and medical policy criteria.

The Court should grant summary judgment in favor of Premera because it was not arbitrary and capricious to deny coverage. There is substantial evidence to support Premera's denial of coverage based on Premera's Medical Policy for determining whether L.M.'s treatment at Eva Carlston was medically necessary. As part of Premera's appeal process, an independent physician, Board Certified in Child & Adolescent Psychiatry, reviewed and concluded that residential treatment was not medically necessary. Finally, Premera's decision was ultimately affirmed by an Independent Review Organization certified by the state of Washington and conducted as required by Washington law. Even if the Court applies the de novo standard of review, it should grant summary judgment in favor of Premera because Plaintiffs have not presented medical evidence to contravene the findings of the independent reviewers that the treatment was not medically necessary.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Microsoft is the Plan Sponsor and Premera is the Third-Party Administrator.

At all relevant times, David M. was a participant in the Microsoft Health Savings Plan, and his daughter, L.M., was a beneficiary. Complaint, ¶ 4. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. § 1001 *et seq*. of the Employee Retirement Income Security Act of 1974 ("ERISA"). Complaint, ¶ 5. This means that Microsoft, and not Premera, insures the Plan's members. *See Kerry v. Southwire Co. & Affiliates Employee Benefit Plan*, 324 F. Supp. 2d 1225, 1229 (D. Utah 2004). Premera is the claims administrator for the Plan. Complaint, ¶ 2.

PREMERA'S MOTION FOR SUMMARY JUDGMENT - 2

Microsoft has retained absolute discretion for deciding claims as the Plan fiduciary, but has delegated its claims administration functions to Premera. *See* Complaint, ¶ 42 (alleging that Premera is Microsoft's agent). The Plan Instrument provides, "[t]he Employer, [*i.e.*, Microsoft] shall be the Named Fiduciary and the Plan Administrator of this Plan." Declaration of Gwendolyn C. Payton ("Payton Decl."), Ex. 1 at 13, Section 5.1.[1] Further, the Plan Instrument grants Microsoft absolute discretionary authority to interpret the Plan and decide claims:

> The Plan Administrator shall have all powers necessary or appropriate to carry out its duties, including, without limitation, the sole discretionary authority to take the actions described in Section 5.2(a) and to interpret the provisions of the Plan and the facts and circumstances of claims for benefits. Any interpretation or construction of or action by the Plan Administrator with respect to the Plan and its administration shall be conclusive and binding upon any and all parties and persons affected hereby, subject to the exclusive appeal procedure set forth in Section 5.6. Benefits under this Plan will be paid only if the Plan Administrator decides in his discretion that the claimant is entitled to them.

Payton Decl., Ex. 1 at 13-14, Section 5.2 (b).

The Administrative Services Agreement ("ASA") between Premera and Microsoft establishes that Microsoft has delegated certain administrative functions to Premera, including claims adjudication like determining the medical necessity of the claim at issue here. Payton Decl, Ex. 2 at 1 ("WHEREAS, the Plan Sponsor desires to engage the services of the Claims Administrator to provide administrative services for the Plan." "'Plan Sponsor' means Microsoft Corporation." "'Claims Administrator' means Premera Blue Cross.").[2] It also contains a grant

---

[1] Exhibit 1, the Plan Instrument, and Exhibit 2, the Administrative Services Agreement, are appended to and authenticated by the Declaration of Gwendolyn C. Payton. Payton Decl., ¶¶ 2, 4 and Exs. 1, 2.

[2] Thus, Plaintiff has named both Microsoft and Premera in this litigation, though he has has failed to serve Microsoft. Microsoft as plan sponsor retains final discretion to decide claims, in reliance on Premera's expertise as claims administrator. *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1204 (9th Cir. 2011). The *Cyr* court explained that, in some circumstances, "[i]t is not enough to identify a plan administrator as a potential defendant, in addition to the plan itself," because "the plan administrator can be an entity that has no authority to resolve benefit claims or

PREMERA'S MOTION FOR SUMMARY JUDGMENT - 3

of discretionary authority to the "Plan Sponsor", *i.e.*, Microsoft, to interpret the Plan's terms and determine benefits eligibility. *Id.* at 3-4. Defendants collectively possess authority and discretion to decide claims.

These terms are disclosed to all members of the Plan, including Plaintiffs. The Plan Instrument is available to all members of the Plan. Payton Decl., ¶ 3. The Summary Plan Description ("SPD") additionally explains Premera's role as claims administrator. *See* [PREM-LM-000637 and -649] (2015 SPD) and [PREM-LM-000717] (2016 SPD)[3]; *see also* [PREM-LM-000626-628] (describing "Premera's internal review process"); *see also*, Complaint, ¶ 42 (alleging that Premera is Microsoft's agent).

**B.      Plaintiffs Seek Reimbursement for L.M.'s Residential Treatment at Eva Carlston Academy.**

Plaintiffs seek reimbursement from the Plan for L.M.'s stay at Eva Carlston Academy ("Eva Carlston"), a residential treatment center in Salt Lake County, Utah. Complaint, ¶ 7; Payton Decl., Ex. 3. Eva Carlston is a self-described "therapeutic program" designed "to help clients achieve greater emotional health and independence." Payton Decl., Ex. 3.[4] Plaintiffs claim out-of-pocket costs in excess of $80,000 for this treatment. Complaint, ¶ 40.

L.M. was admitted to Eva Carlston on April 21, 2015 with an initial diagnosis of major depressive disorder severe without psychotic features; unspecified anxiety disorder; ADHD inattentive type; unspecified neurodevelopmental disorder consistent with mild non-verbal

---

any responsibility to pay them." *Id.* at 1207. Here, the Plan gives Microsoft authority to resolve benefit claims and delegates Microsoft with authority to pay them.

[3] Citations to page numbers with the prefix PREM-LM reference pages of the administrative record, which has been filed under seal with the Court (Dkt. 20) pursuant to the Court's Order of February 20, 2018. See Dkt. 21.

[4] Exhibit 3, a PDF of Eva Carlston's website, is appended to and authenticated by the Declaration of Gwendolyn C. Payton. Payton Decl, ¶ 5, Ex. 3.

PREMERA'S MOTION FOR SUMMARY JUDGMENT - 4

learning disorder.  Complaint, ¶¶ 23-24.  L.M. was 14 years old at the time of admission.  [PREM-

LM-000530].

> On its website, Eva Carlston describes its program as follows:
>
> At Eva Carlston, adolescent girls who have struggled deeply are invited to find
> their unique place in the world, a passion to inspire and guide them, and a sense
> of purpose in life. It's through a combination of sophisticated therapy,
> mentorship, the arts, and experiential learning that students at Eva Carlston heal
> and grow. They discover that they can succeed, take care of themselves, and love
> life as they journey toward young adulthood.

Payton Decl., Ex. 3.  It provides the following additional detail regarding its "troubled teens"

programs:

> **Find your place…**
>
> Unlike other therapeutic programs, Eva Carlston does not cloister students away
> from "real life" in order to conduct treatment. Our program takes place in three
> elegantly appointed houses in urban Salt Lake City, giving girls an intimate sense
> of home as well as access to the cultural resources and opportunities of a large
> city. In this family-style* setting girls feel safe, valued, and at ease. With only 12
> – 16 girls per house, deep friendships develop quickly. By participating directly
> in all decisions that affect her house, each girl finds her own unique voice and
> place in this intimate community.
>
> **Find your passion…**
>
> Eva Carlston complements intensive, sophisticated psychotherapy with a robust
> program of art therapy, accredited academics, life-skills instruction, and
> therapeutic recreation. All elements of our program are oriented toward helping
> girls discover and develop a passion—one that will energize, guide, and motivate
> them for years to come. This work can be difficult, particularly for girls who have
> struggled with depression, anxiety, and low self-esteem, but discovering "what
> makes me tick" is the foundation of effective treatment.
>
> **Find your life…**
>
> We believe that the best way to foster the qualities of a confident, purposeful
> woman is to model those qualities. Our female owned and operated program hires
> highly accomplished therapists and teachers who have proven themselves in their
> respective fields and share a deep passion for mentoring others. The women on
> our staff are experts at providing a safe place for girls to address sensitive issues
> such as trauma, while serving as inspiring mentors, friends, and role models. Our

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

male team members are equally important, offering a complementary perspective and helping girls develop healthy, confident ways of relating to men.

*Id*.

**C.     The Plan Covers Only Medically Necessary Treatment as Established by Premera's Applicable Medical Policy.**

The Plan does not cover services that are not medically necessary:

**EXCLUSIONS AND LIMITATIONS**
- Services or supplies not medically necessary for diagnosis, care, or treatment of a disease, illness, injury, or medical condition, except for the following: (a) newborn nursery care covered under the hospital benefit; (b) male circumcision benefit; (c) sterilization benefit; (d) termination of pregnancy benefit; (e) infertility benefit; (f) hospice care benefit; and (g) well-child care and adult physical exam benefits

[PREM-LM-000701].

Medically necessary is, in turn, defined as follows:

**Medically Necessary**—A covered service or supply that meet certain criteria including:
- It is essential to the diagnosis or the treatment of an illness, accidental injury, or condition that is harmful or threatening to the enrollee's life or health, unless it is provided for preventive services when specified as covered under this plan.
- It is appropriate for the medical condition as specified in accordance with authoritative medical or scientific literature and generally accepted standards of medical practice.
- It is a medically effective treatment of the diagnosis as demonstrated by the following criteria:
  - There is sufficient evidence to draw conclusions about the positive effect of the health intervention on health outcomes.
  - The expected beneficial effects of the health intervention on health outcomes outweigh the expected harmful effects of the health intervention.
- It is cost-effective, as determined by being the least expensive of the alternative supplies or levels of service that are medically effective and that can be safely provided to the enrollee. A health intervention is cost-effective if no other available health intervention offers a clinically appropriate benefit at a lower cost.
- It is not primarily for research or data accumulation.
- It is not primarily for the comfort or convenience of the enrollee, the enrollee's family, the enrollee's physician or another provider.
- It is not experimental or investigational.

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

- It is not recreational, life-enhancing, relaxation or palliative therapy, except for treatment of terminal conditions.
For these purposes, "generally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature that is generally recognized by the relevant medical community Physician Specialty Society recommendations, the views of physicians practicing in relevant clinical areas, and any other relevant factors.

[PREM-LM-000733].

Premera's criteria for evaluating the medical necessity of residential treatment are set forth in "Policy: 3.01.508 Behavioral Health: Psychiatric Residential Treatment". [PREM-LM-000922-929] (the "Medical Policy" or "Policy"). The Medical Policy outlines in detail what constitutes medical necessity in the context of psychiatric residential treatment. *Id*.

The Medical Policy criteria assess two factors: 1) the severity of the illness and 2) the level and quality of mental health services provided by the residential treatment facility. [PREM-LM-000922-923].

With respect to severity of the illness, the Medical Policy criteria assess whether the illness is so severe that 24/7 containment and treatment are required, as opposed to partial hospitalization or outpatient counseling. [PREM-LM-000922]. The Medical Policy notes that the purpose of residential treatment admission is to provide a short-term stay to stabilize the patient so that she can be treated in a less-restrictive setting or transferred to an appropriate placement if the residential treatment does not result in stabilization. *Id*. The Medical Policy allows for continued stay at a residential treatment facility when the patient demonstrates "significantly impaired functioning", severe "behavioral dyscontrol", "continued repetitive harm to self or others", or "active risk of harm to self or others" at a severity requiring 24/7 containment and treatment, or if "sufficient stabilization" has not occurred. [PREM-LM-000923] (Medical Policy, "Severity of Illness Criteria for Continued Stay," subsection a.). The medical policy

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

allows for stays for additional brief periods to allow for transition.  *Id.* at subsections b-d.

The Medical Policy criteria also assess the level and quality of mental health services provided by the program.  The Plan covers medical services that result in "clinical progress", including "symptom reduction, functional improvement, or improvement in behavioral control." [PREM-LM-000923].  The Plan does not cover boarding schools, custodial facilities, or other programs that are not equipped to provide intensive medical treatment to patients suffering from symptoms severe enough to require 24/7 containment and treatment.[5]  [PREM-LM-000923].  As such, the Medical Policy requires, among other criteria, that:

- The patient must be involved in active treatment activities or interventions during a majority of waking hours, 7 days/week.

- Clinical assessment at least once daily.

- Group psychotherapy and/or milieu therapeutic activities several hours daily.

[PREM-LM-000926-927].

## D. Plaintiffs' Claim for Residential Treatment was Reviewed and Denied by Premera Based in Part on the Decisions of Two Independent Physician Reviewers.

Plaintiffs submitted a prior authorization request to Premera for L.M.'s ongoing residential treatment at Eva Carlston after March 30, 2015.  Complaint, ¶¶ 23, 46.  Premera's Medical Director for Behavioral Health, Dr. Robert Small, reviewed the medical records and other information regarding LM.'s treatment at Eva Carlston and denied the request as not medically necessary.  Complaint, ¶ 28; [PREM-LM-000469-70] ("Initial Decision Letter").  The Initial Decision Letter notified Plaintiffs that its evaluation of medical necessity was based on

---

[5] The Plan does reimburse for discrete medically necessary mental health counseling and other mental health services, when they are billed separately from the RTC stay, provided at boarding schools, non-covered residential treatment centers, and other programs, even when it does not cover the entire cost of tuition or stay.

PREMERA'S MOTION FOR SUMMARY JUDGMENT - 8

the application of the criteria set forth in the applicable Medical Policy as well as review of the information provided regarding L.M.'s treatment at Eva Carlston.  Complaint, ¶28; [PREM-LM-000469-70].  In its Initial Decision Letter, Premera wrote that the stay did not meet the Medical Policy criteria.  [PREM-LM-000469].  Specifically, the psychiatrist in charge of L.M.'s treatment did not evaluate her every seven days, and L.M. did not receive weekly individual therapy. [PREM-LM-000469-70].  Consequently, the claim was denied as not medically necessary as the program did not provide intensive medical treatment sufficient to meet the Medical Policy criteria.  Complaint, ¶ 29; [PREM-LM-000469-70].

Notwithstanding Premera's initial denial of coverage, L.M. stayed at Eva Carlston from March 31, 2015 through June 16, 2016.

On April 19, 2016, Plaintiffs appealed the denial of coverage through Premera's internal appeal process.  Complaint, ¶ 30; [PREM-LM-000051-55] ("Internal Appeal").  In their appeal, Plaintiffs argued that the stay was medically necessary.  [PREM-LM-000051].  In support of their Internal Appeal, Plaintiffs included an undated letter from the Executive Director of Eva Carlston, Kristi Ragsdale, stating only (in four lines) that L.M. was receiving three hours of individual therapy and five hours of group therapy weekly.  [PREM-LM-0001008].  Plaintiffs argued that this level of therapy satisfied the Medical Policy requirements.  [PREM-LM000054]. Plaintiffs' Internal Appeal included a complete set of the medical records from Eva Carlston in Plaintiffs' possession.  *Id*.

Plaintiffs did not submit any additional medical opinion to support their position that L.M.'s treatment at Eva Carlston was medically necessary.  Plaintiffs submitted no evidence addressing Premera's Medical Policy for determining whether the requested coverage for residential treatment was medically necessary.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

Plaintiffs claimed that Premera had "fully vetted" Eva Carlston as a credentialed residential treatment center in connection with Premera's decision to cover L.M.'s first eleven days of treatment.  [PREM-LM-000052].  Plaintiffs then asserted that Premera had agreed that L.M. needed outpatient therapy, and Premera should therefore be willing to cover the treatment portion of the Eva Carlston bills if Lyn M. covered room and board costs.  *Id.*

Premera submitted the appeal request and records to AllMed Healthcare Management ("AllMed"), an independent review organization, for review by a behavioral health specialist. Dr. Paul Hartman, a physician Board Certified in Child & Adolescent Psychiatry and employed by AllMed, reviewed Plaintiffs' appeal submission and other relevant claim information, including Plaintiffs' appeal letter, L.M.'s medical records, the Plan language, and the applicable Medical Policy.  [PREM-LM-000099-100].  He noted that the submitted clinical documentation indicated that L.M.'s condition had stabilized and that she "was not so emotionally reactive and had fewer suicidal ideation comments," with "no thoughts of self-harm."  [PREM-LM-000100]. Although she had a brief later episode of "transient suicidal ideation," "she subsequently re-stabilized."  *Id.*  He concluded that the standard of care for L.M. was a partial hospitalization program, which "would enable the member to continue to make clinical progress," not intensive 24-hour residential treatment.  [PREM-LM-000102].

Premera denied Plaintiffs' Internal Appeal on June 3, 2016.  [PREM-LM-000931-35] ("Internal Appeal Decision").  This decision, which was based on Dr. Hartman's review, reasoned that the record did "not indicate that [L.M.] continued to experience severe mental health symptoms requiring 24-hour residential treatment."  [PREM-LM-000931].  "[T]here was no documented evidence of ongoing suicidal or homicidal ideation, self-injury, psychosis, or severe difficulties in self-care."  [PREM-LM-000931].  Consequently, "[L.M.] could have been

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

treated in a less restrictive setting, such as a partial hospitalization program (PHP)." *Id*. Therefore, residential treatment services were not medically necessary. [PREM-LM-000931]. The Internal Appeal Decision found that L.M.'s treatment did not satisfy the first criteria of the Medical Policy: the intensity of symptoms. *Id*. The Internal Appeal Decision noted that "the documentation does not indicate that [L.M.] continued to experience severe mental health symptoms requiring 24-hour residential treatment" and that the record showed "no documented evidence of ongoing suicidal ideation or homicidal ideation, self-injury, psychosis or severe difficulties in self-care." [PREM-LM-000931]. Absent such evidence, L.M.'s treatment was not medically necessary. *Id*. L.M. "could have been treated in a less restrictive setting" instead. *Id*.

The Internal Appeal Decision further explained that Premera had decided to reimburse for the first eleven days of L.M.'s stay at Eva Carlston because of Premera's "internal delay" in reviewing the initial prior authorization request. [PREM-LM-000931]. "[Those] days were not approved based on being medically necessary." *Id*.

On September 27, 2016, Plaintiffs submitted a request for an independent external review of Premera's Internal Appeal Decision. [PREM-LM-000013-25]. The independent external review was conducted, pursuant to Revised Code of Washington, section 48.43.535, and certified by the state of Washington as required by Washington law, by National Medical Reviews ("NMR"). [PREM-LM-000739-43]; *see* RCW 48.43.535. An anonymous physician at NMR ("IRO Reviewer") who was board certified in psychiatry, licensed to practice in five states, and had two decades of clinical experience, reviewed the claim. [PREM-LM-000739-43].

The IRO Reviewer concluded that the treatment that L.M. had received at Eva Carlston did not meet the Plan's criteria for establishing medical necessity. [PREM-LM-000740-43]. The IRO Reviewer did not challenge L.M.'s diagnosis, but instead noted that "at the time of the

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

member's admission, documentation did not reflect symptoms at a level of severity to meet the medical necessity criteria for the requested service." [PREM-LM-000742]. The IRO Reviewer noted that although L.M. had been hospitalized for suicidal ideation several months prior to admission, the records did not show that that threat existed at the time of hospitalization. [PREM-LM-000742-43].

The records also did not establish that L.M.'s condition was "continuing to cause significant impairment in functioning" such that she needed residential treatment rather than "partial hospitalization or outpatient treatment." [PREM-LM-000743]. Further, the IRO Reviewer noted the record included no indication of "difficulties related to daily living aside from the member being unable to attend school[]." *Id*. Upon consideration of L.M.'s history and Eva Carlston's treatment records, the IRO Reviewer determined that residential treatment was not medically necessary. *Id*. Accordingly, NMR upheld Premera's denial of coverage for inpatient residential treatment. *Id*.

## III.   ARGUMENT

### A.   Arbitrary and Capricious is the Applicable Standard of Review.

The arbitrary and capricious standard of review applies here. Microsoft has discretion over the benefits and has delegated authority to Premera to administer the benefits for which Microsoft is solely and totally responsible. *See McGraw v. Prudential Ins. Co. of Am*., 137 F.3d 1253, 1259 (10th Cir. 1998); *Brightway Adolescent Hosp. v. Strachan, Green, Miller & Olender*, No. 2:99-cv-288K, 2000 WL 33363258, at *4-5 (D. Utah Dec. 15, 2000). In an ERISA-governed benefit coverage dispute, a court undertakes either a de novo review or applies a more deferential standard. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111, 128 S. Ct. 2343 (2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948 (1989) (citing 29 U.S.C.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

§ 1132(a)(1)(B))). In the Tenth Circuit, when a more deferential review is appropriate, the standard of review is arbitrary and capricious. *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (citing *Firestone*, 489 U.S. at 113-15). The arbitrary and capricious standard is applicable here because the Plan language invests Microsoft with absolute discretion to decide claims. *See supra* at pp. 2-3.

The question of which standard of review applies turns on the plan language. De novo review is the presumed standard. *Firestone*, 489 U.S. at 115. However, where a "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," a more deferential standard of review applies. *Firestone*, 489 U.S. at 115; *see also Ownings v. United of Omaha Life Ins. Co.*, 873 F.3d 1206, 1212 (10th Cir. 2017) (applying the "deferential standard" of arbitrary and capricious where the policy granted the insurer with the discretion and final authority to construe and interpret the policy). The party that contends that a more deferential standard should apply has the burden of establishing the circumstances to justify that deference. *LaAmsar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan*, 605 F.3d 789 (10th Cir. 2010).[6]

The Plan Instrument contains a clear and unambiguous grant of discretionary authority to Microsoft, as the Plan Sponsor, to interpret the Plan's terms and determine benefits eligibility. *See supra* at pp. 2-3. This establishes that the arbitrary and capricious standard of review applies. *Adamson*, 455 F.3d at 1212 (citing *Firestone*, 489 U.S. at 113-15). Microsoft, in turn, has delegated claims administration duties to Premera, which does not alter the standard of review.

---

[6] However, as discussed below, regardless of which standard of review the Court applies, there is no genuine issue of material fact before the Court in this case, and summary judgment is therefore appropriate.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

*See Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1129 (10th Cir. 2011)

("Mr. S. does not challenge, and has never challenged, the authority of Magellan to act as third-

party plan administrator on behalf of Horizon. Our case law recognizes that such delegations

occur without altering the applicable standard of review.") (citing *Geddes v. United Staffing*

*Alliance Emp. Med. Plan*, 469 F.3d 919, 926 (10th Cir. 2006); *Gaither v. Aetna Life Ins. Co.*, 394

F.3d 792, 801 (10th Cir. 2004)).[7]

Because Microsoft has delegated claims adjudication to its agent Premera, there is no

limitation on the arbitrary and capricious standard. *Atkins v. SBC Commc'ns, Inc.*, 200 F. App'x

766, 771 (10th Cir. 2006) ("Construed together, the plan documents and the contract between

SBC and Sedgwick establish that Sedgwick has the power to make final and conclusive short-

term disability decisions. Thus, the plan documents and contract do not support Ms. Atkins'

argument that the sliding scale arbitrary and capricious standard of review should apply."); *see*

*also*, *Tillotson v. Life Ins. Co. of N. Am.*, No. 1:10-CV-00047-TS, 2011 WL 285815, at *3 (D.

Utah Jan. 28, 2011) ("Because different entities fund and administer the STD Plan 'neither LINA

nor MRIA in their respective roles as Claim Administrator and Appeal Administrator of the STD

---

[7] The Court may consider the Plan Instrument and the ASA even though they were not originally
part of the administrative record. Although supplementation regarding eligibility for benefits is
not permitted, supplementation is allowed for assessing the standard of review. *Murphy v.*
*Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1157–59 (10th Cir. 2010). This is particularly
true, where, as here, the plaintiff alleges that the Plan Sponsor is in a conflict of interest. *Id.* at
1162 ("Given that Mr. S. asserted a dual-role conflict of interest against a plan administrator, the
district court certainly was not prohibited from supplementing the administrative record with the
[parties' administrative services agreement]"); *see also, See Daniel v. UnumProvident Corp.*, 261
F. App'x 316, 318 (2d Cir. 2008) (holding that it was improper for a district court to decline to
review the governing administrative services agreement where review of that document was
necessary "to establish which entity actually decided her claim and therefore which standard of
review was applicable in federal court"); *see also*, Complaint ¶ 42.

PREMERA'S MOTION FOR SUMMARY JUDGMENT - 14

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

Plan have the requisite dual capacity of insurer and administrator that creates an 'inherent conflict of interest.'").

"Such a delegation" as Microsoft has made to Premera "can mitigate what otherwise would be a dual-role conflict of interest." *Eugene S.*, 663 F.3d at 1133 (citing *Finley v. Hewlett–Packard Co. Empl. Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004))[8]. The Court should therefore review Premera's denial of benefits "under a 'pure' arbitrary and capricious standard." *Eugene S.*, 663 F.3d at 1133.

**B.    The Arbitrary and Capricious Standard Requires that "Substantial Evidence Supported" Premera's Decision.**

Under an arbitrary and capricious standard of review, the Court must decide, based on the same evidence that was before the administrator, "whether substantial evidence supported" the denial of coverage. *Te'O v. Morgan Stanley & Co. Inc.*, 311 Fed. Appx. 165 (10th Cir. 2009) (internal quotations omitted). Under this standard, the decision "need not be the only logical one nor even the best one." *Te'O*, 311 Fed. Appx. at 169 (quoting *Finley v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004)). It only needs to be grounded in a "reasonable basis." *Id.*; *Adamson*, 455 F.3d at 1212 (holding that a decision should be upheld where it "is predicated on a reasoned basis."). This conclusion requires only that the decision is "somewhere on the continuum of reasonableness—even if on the low end." *Id.* (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (internal quotations omitted)).

---

[8] "Asserting a conflict based on a generalized economic incentive, such as attracting more business through the denial of claims, without more, is 'insufficient to rise to the level of a legally cognizable conflict of interest.'" *Eugene S.*, 663 F.3d at 1133 (citing *Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1296 (10th Cir. 2000)).

PREMERA'S MOTION FOR SUMMARY JUDGMENT - 15

As discussed below, on the facts before this Court, Premera's decision was not arbitrary and capricious because it was reasonable based on the administrative record and as confirmed by the opinion of two independent reviewers.

**C.      Substantial Evidence, Including the Opinions of Two Independent Physicians, Demonstrates That L.M's Treatment Was Not Medically Necessary.**

The Court should grant summary judgment in favor of Premera because the only competent, admissible medical evidence before this Court confirms that L.M.'s treatment was not medically necessary.  This Court so held and the Tenth Circuit affirmed in *Eugene S.*, a case closely analogous to the case at bar. *Eugene S.*, 663 F.3d 1124. In *Eugene S.*, the defendant, Horizon, had delegated Horizon's claims administration functions to a third-party plan administrator, Magellan.  Magellan originally denied the claim and explained that Mr. S.'s son ("A.S.") qualified for intensive outpatient treatment but not for residential treatment.  *Id*. at 1128. As in the case at bar, the plan at issue in *Eugene S.* evaluated medical necessity based on the severity of symptoms and the intensity of treatments.  *See id.* at 1134 ("The first criterion for continued stay essentially requires that a plan participant (1) still suffer from the same problem, which remains serious enough to justify residential treatment admission; or (2) suffer from a new problem which, independently, would justify residential treatment admission; or (3) be unable to re-enter the community based on actual experience or clinical evidence.  To satisfy either of the first two alternatives, one must demonstrate that either the original issue(s), or a new issue, would satisfy the nine separate and explicit requirements for initial admission into a residential treatment center.").

On Mr. S.'s final internal appeal, Magellan approved and provided benefits for residential treatment between August 10 and November 2, 2006, but reiterated that from November 3, 2006 to June 12, 2007 Mr. S.'s son only qualified for intensive outpatient treatment, and denied

PREMERA'S MOTION FOR SUMMARY JUDGMENT - 16

residential treatment benefits during that period. *Id*. Having exhausted his administrative appeals, Mr. S. sued Horizon, challenging its denial of benefits under ERISA. *Id*. Magellan found that, as of November 3, "[t]here was no reported information" that A.S. could not care for himself due to a psychiatric disorder, nor that he required round-the-clock supervision to develop basic living skills. *Id*. at 1134 (internal citations omitted). Instead, Magellan noted that A.S. "went home on a pass and did well with his parents." *Id*. Thus, Magellan concluded that while A.S. "met criteria for continued treatment," he met those criteria for "a less restrictive level of care" to include "several hour[s] [per] day, multiple times [per] week [of] psychiatric evaluation and treatment including counseling, education and therapeutic interventions." *Id*. The Tenth Circuit agreed with this Court that substantial evidence in the record supported Horizon's denial of benefits for the portion of the residential stay in dispute, and affirmed. *Id.*

Here, the evidence supporting the denial of residential treatment is even stronger than in *Eugene S.* In this case, L.M.'s request for residential treatment was reviewed and denied by two separate, independent reviewers who were specialists in behavioral health. In contrast, the Tenth Circuit affirmed the denial of residential treatment services in *Eugene S.*, where there is no record of any independent review.

Premera's conclusion that the treatment was not "medically necessary" was upheld on appeal after an Independent Medical Review by Dr. Paul Hartman, who is Board Certified in Child & Adolescent Psychiatry. Dr. Hartman reviewed Plaintiffs' submission and the claim information and concluded, "[b]ased on the clinical information provided and the member plan provisions," that residential treatment was not medically necessary. [PREM-LM-000099-100].[9]

---

[9] There is no indication in *Eugene S.* that Horizon or its third-party administrator, Magellan, relied upon an Independent Medical Review in connection with the internal appeal.

PREMERA'S MOTION FOR SUMMARY JUDGMENT - 17

According to Dr. Hartman, L.M.'s treatment failed to meet four of the requirements for a finding of medical necessity. [PREM-LM-000100-101]. It was not "essential", "appropriate", or "cost-effective". *Id*. Dr. Hartman also did not find that the treatment was "not primarily for the comfort or convenience of the enrollee" or the enrollee's family, physician, or another provider. *Id*. Based on each of those findings, Dr. Hartman concluded that the service was not "medically necessary" and that "[t]he member does not require the intensity of residential 24-hour monitoring." *Id*.

Subsequently, L.M.'s claim was submitted to an IRO for review by a second independent physician. [PREM-LM-000739-43]. The IRO's review was conducted by a board-certified physician associated with National Medical Reviews, an IRO. [PREM-LM-000743].[10] The IRO reviewer concluded, as did Dr. Hartman, that residential treatment was not medically necessary and upheld Premera's denial. [PREM-LM-000739-43]. The IRO noted that the records did not reflect that L.M. was "continuing to exhibit ideation regarding harm to self or others" or that her diagnosis was "continuing to cause significant impairment in functioning" and therefore residential treatment was "not medically necessary." [PREM-LM-000743].

These two physician opinions are independent and unencumbered by any conflict of interest. *See Tracy O. v. Anthem Blue Cross Life and Health Ins. Co.*, 2017 WL 3437672, at *9 (D. Utah Aug. 10, 2017) (granting summary judgment for defendants in reliance, in part on the opinions of board certified physicians "with no affiliation with [d]efendants"). Neither denied L.M.'s diagnosis. Both reviewed L.M.'s entire record at Eva Carlston and each independently concluded on that record and based on their professional experience and judgment that L.M.'s

---

[10] There was no such IRO review in *Eugene S*.

PREMERA'S MOTION FOR SUMMARY JUDGMENT - 18

symptoms did not require an inpatient level of treatment.  Thus, L.M.'s treatment at Eva Carlston was not medically necessary.  The record contains no responsive evidence to rebut these findings.

As intuition and precedent dictate, where, as here, a claim is reviewed by an independent review organization and deemed not medically necessary, that finding supports a conclusion that the denial was not arbitrary or capricious.  *See Tracy O.*, 2017 WL 3437672, at \*9 (noting, in granting summary judgment in favor of the defendants, that the insurer's "conclusions are further supported by the independent review" of the claims and were not arbitrary or capricious); *Blair v. Alcatel-Lucent Long Term Disability Plan*, 688 Fed. Appx. 568, 576 (10th Cir. 2017) (noting in a disability benefit case that a decision to terminate long-term disability benefits was not arbitrary and capricious where two independent reviewers concluded that the claimant was able to work); *see also Basquez v. East Cent. OK Elec. Co-op., Inc.*, No. 06-cv-487 (SPS), 2008 WL 906166, at \*11 (E.D. Okla. March 31, 2008) (citing *Davis v. UNUM Life Ins. Co. of Am.*, 444 F.3d 569, 575 (7th Cir. 2006)) ("[A]n administrator's decision to seek [] independent expert advice is evidence of a thorough investigation. When an administrator ... opts to investigate a claim by obtaining an expert medical opinion—independent of its own lay opinion and that of the claimant's doctors—the administrator is going to pay a doctor one way or another.  Paying for a legitimate and valuable service in order to evaluate a claim thoroughly does not create a review-altering conflict." (internal citations and quotations omitted)); *see also* John Bronsteen, Brendan S. Maher & Peter K. Stris, *ERISA, Agency Costs, and the Future of Health Care in the United States*, 76 FORDHAM L. REV. 2324-26 (2008) (explaining that external review significantly diminishes agency risk because the agent's discretion for opportunistic behavior is circumscribed by the determinations of an impartial reviewer).

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

D.     **Because the Opinions of Two Independent Physicians Demonstrating That L.M's Treatment Was Not Medically Necessary are Undisputed, the Court Should Grant Summary Judgment in Favor of Premera Even if It Applies the De Novo Standard of Review.**

Even if this Court determines that the de novo standard of review applies, this Court should grant summary judgment. When review is de novo, "[s]ummary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Owings v. United of Omaha Life Ins. Co.*, 873 F.3d 1206, 1212 (10th Cir. 2017) (internal citations and quotations omitted). The Court should review the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Id.*

However, the Court should bear in mind that a plaintiff challenging a benefits decision under 29 U.S.C. § 1132(a)(1)(B) bears the burden of proving entitlement to benefits. *See Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1324 (10th Cir. 2009); *see also Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp.3d 1239 (D. Utah 2016).

There is no evidence in the record, including in the correspondence from Eva Carlston personnel, L.M.'s medical records, and Eva Carlston's treatment records, that would raise a genuine issue of material fact as to medical necessity under the contractual terms of the Plan. This Court's decision in *Tracy O.* is instructive. *Tracy O.*, 2017 WL 3437672. In *Tracy O.*, the plaintiff submitted letters from two treating physicians in connection with her appeal. *Id.* at *5. The letters summarized the patient's medical history and noted serious concerns over the patient's suicidal ideations and other oppositional behaviors. *Id.* at *5. Neither letter, however, reviewed the patient's need for treatment against the plan terms and applicable residential care criteria or analyzed whether the patient's conditions could be managed with a less intensive level of care. *Id.*

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

On summary judgment, this Court concluded that the provider letters were insufficient to satisfy plaintiff's burden—even under *de novo* review—that the case met the applicable residential treatment criteria for medical necessity. *Id.* The record before this Court in support of medical necessity is even less robust than in *Tracy O.* Here, there is no medical evidence to establish medical necessity. The records of treatment from Eva Carlston on their face establish that L.M.'s treatment at Eva Carlston does not meet the criteria set forth in Premera's Medical Policy. The only competent evidence before this Court confirms that L.M.'s treatment was not medically necessary and, thus, on this record the Court should grant summary judgment for Premera under either the arbitrary and capricious or the de novo standard.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of the Defendant Premera.

DATED this 6th day of April, 2018.

KILPATRICK TOWNSEND & STOCKTON, LLP

By:  */s/ Gwendolyn C. Payton*
         Gwendolyn C. Payton
         *Attorneys for Premera Blue Cross*


JONES WALDO HOLBROOK & McDONOUGH, PC

By:  */s/ Jessica P. Wilde*
         Jessica P. Wilde
         *Attorneys for Premera Blue Cross*

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of April, 2018, I electronically filed the foregoing DEFENDANT PREMERA BLUE CROSS'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> Brian S. King
> BRIAN S. KING, PC
> 336 South 300 East, Suite 200
> Salt Lake City, UT 84111
> Telephone: (801) 532-1739
> Facsimile: (801) 532-1936
> brian@briansking.com
>
> Nediha Hadzikadunic
> BRIAN S KING PC
> 336 South 300 East, Suite 200
> Salt Lake City, UT 84111
> Telephone: (801) 532-1739
> Facsimile: (801) 532-1936
> nediha@briansking.com

*/s/ Gwendolyn C. Payton*
Gwendolyn C. Payton

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946