IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LYN M., and DAVID M., as Legal Guardians of L.M., a minor,<br><br>Plaintiff,<br><br>v.<br><br>PREMERA BLUE CROSS, and MICROSOFT CORPORATION WELFARE PLAN,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Civil No. 2:17-cv-01152-BSJ<br><br>The Honorable Bruce S. Jenkins |

Plaintiffs' Motion for Summary Judgment and Defendants' Cross-Motion for Summary Judgment came before the Court on May 15, 2018, Brian King and Nediha Hadzikadunic appearing on behalf of Plaintiffs Lyn M. and David M. as legal guardians of L.M., and Gwendolyn Payton appearing on behalf of Defendant Premera. Plaintiff filed its Motion for Summary Judgment on April 6, 2018, and Defendants filed their Cross-Motion for Summary Judgment on that same date. At the May 15, 2018 hearing, the Court heard oral arguments on the motions and took the matter under advisement.

Having considered the parties' briefs, the evidence presented, the oral arguments of counsel, the relevant law, as well as the full record in this matter, the Court concludes that Defendants' Motion for Summary Judgment should be GRANTED and Plaintiffs' Motion for Summary Judgment should be DENIED.

**I.    Background**

This is a dispute over insurance coverage under an ERISA health insurance plan for L.M's fourteen-month stay at Eva Carlston Academy, a residential treatment center in Salt Lake County, Utah, with related costs in excess of $80,000.

L.M. suffered from mental health issues from an early age, exhibiting symptoms of anxiety and panic attacks early in her childhood and beginning therapy at eight years old. Around this time she also began seeing a psychiatrist, was diagnosed with attention deficit hyperactivity disorder and prescribed a variety of medications. Her conditions worsened throughout elementary school and negatively impacted her academic performance.

L.M.'s parents enrolled her in a number of schools in attempts to find an environment suitable for her mental health conditions, including a school for "bright children who had difficulty functioning in a traditional school environment." The new school environments proved ineffective, as L.M. struggled to pay attention in class and maintain an adequate attendance record. L.M.'s condition continued to deteriorate as the anxiety and depression intensified, leading her to spend most of her time in her room and to self-harm by cutting on her upper thighs and wrists. She attended her freshmen year of high school for only two-weeks before transferring to the school's "homebound" program for students who could not physically attend school. Her participation in this program ultimately stopped as well, as she stopped interacting with her family and focused solely on the internet.

A session with L.M.'s therapist led to L.M. being placed on suicide watch in an acute in-patient mental health facility for four days, because she was planning to kill herself. She subsequently participated in a two-week outpatient follow-up program. A few months later, L.M.'s parents decided to place her in Eva Carlston Academy, a long-term residential treatment

2

center in Salt Lake County, Utah, where she was admitted on March 21, 2015. She remained in the treatment center for roughly fourteen months and showed moderate improvement over the length of her stay.

L.M.'s parents and legal guardians Lyn and David M. submitted claims to Premera, the claims administrator of the insurance plan, for coverage for the treatment costs, which were denied by letter on March 31, 2015. The stated basis was that the treatment center did not meet the "intensity of treatment" requirements under the health plan's guidelines for inpatient stays, which require in-person evaluation by a psychiatrist at least once every seven days and weekly individual therapy. Specifically, Premera provided the following justification for its denial:

> The information that your provider gave to your health plan shows that the psychiatrist in charge of your treatment evaluates you in-person once a month, not once every seven days. The information also shows that you are receiving individual therapy every other week, not weekly. Therefore, mental health residential treatment is denied as not medically necessary after 3/30/15. Your health plan covers only medically necessary services.

Dkt. No. 20-1, The Administrative Record, p. 66.

On April 19, 2016, Lyn and David appealed Premera's denial of coverage, requesting a review of the adverse benefit determination for services provided from April 1, 2015 – forward, as L.M. was still in treatment. On June 3, 2016, Premera denied Lyn and David's appeal on the basis of reviews made by a physician board certified in Child and Adolescent Psychiatry, along with Premera's internal medical director. They gave the following rationale for their denial:

> [L.M] is a 15-year-old female with depression and anxiety. She was admitted to residential treatment due to problems with depressed mood and anxiety and a history of suicidal thoughts. The documentation does not indicate that [L.M.] continued to experience severe mental health symptoms requiring 24-hour residential treatment as of April 1, 2015. This is because there was no documented evidence of ongoing suicidal and homicidal ideation, self-injury,

3

> psychosis, or severe difficulties in self-care. She could have been treated in a less restrictive setting, such as a partial hospitalization program (PHP), instead. As such, continued residential treatment services would not be considered standard of care or medically necessary. To be covered, all mental health treatment must be medically necessary to be eligible for coverage.
>
> ...the criterion [of being medically necessary] has not been met because there is no documented evidence of ongoing suicidal or homicidal ideation, self-injury, psychosis, or severe difficulties in self-care.

Dkt. No. 20-1, The Administrative Record, p. 45.

Premera further specified that the treatment was not covered because of its failure to comply with the following provisions delineating the required components of "medically necessary" treatment:

- [The treatment must be] appropriate for the medical condition as specified in accordance with authoritative medical or scientific literature and generally accepted standards of medical practice.

- [The treatment must be] essential to the diagnosis or the treatment of an illness, accidental injury, or condition that is harmful or threatening to the enrollee's life or health, unless it is provided for preventative services when specified as covered under this plan.

- [The treatment must be] cost-effective, as determined by being the least expensive of the alternative supplies or level of service that are medically effective and that can be safely provided to the enrollee. A health intervention is cost-effective if no other available health intervention offers a clinically appropriate benefit of a lower cost.

- [The treatment must not be] primarily for the comfort or convenience of the enrollee, the enrollee's family, the enrollee's physician or another provider.

*Id.* at 46.

On September 27, 2016, Lyn and David filed an external review appeal. On October 24, 2016, National Medical Reviews ("NMR"), an external review organization, upheld the denial

4

on the basis that L.M.'s residential treatment "from 4/01/2015 forward was not medically necessary." NMR's report provided the following rationale:

> Documentation within the records reflects that the member has a history of depressive symptoms, anxiety symptoms, ADHD. However, at the time of the member's admission, documentation did not reflect symptoms at a level of severity that met medical necessity criteria for the requested service.
> ...
> [D]ocumentation does not reflect the claimant's psychiatric disorders as continuing to cause significant impairment in functioning that is supported as causing harm to self or others or requiring stabilization at a level of care that does not support the member as being able to be provided treatment in a level of care such as partial hospitalization or outpatient treatment.

Dkt. No. 20-3, The Administrative Record, p. 276-77.

With their appeals exhausted under the Plan, Lyn and David brought this judicial action under ERISA provision 29 U.S.C. § 1132(a)(1)(B) to recover benefits due and now move for summary judgment.

## II. Discussion

### A. Standard of Review for Benefit Determinations

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). The Court's scope of review is also generally limited to the pre-litigation appeal record without allowance for new facts or arguments being presented in litigation by either party. *Jewel v. Life Ins. Co. of North America,* 508 F.3d 1303, 1308 (10th Cir. 2007).

The party contending that a more deferential standard should apply has the burden of establishing the circumstances to justify that deference. *LaAmasar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan*, 605 F.3d 789 (10th Cir. 2010). In the Tenth Circuit, when a more deferential review is appropriate the standard of review is arbitrary and capricious. *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (citing *Firestone*, 489 U.S. at 113-115). Under an arbitrary and capricious standard of review the Court must decide, on the same evidence that was before the administrator, "whether substantial evidence supported" the denial of coverage. *Te'O v. Morgan Stanley & Co. Inc.*, 311 Fed. Appx. 165 (10th Cir. 2009) (internal quotations omitted). This decision "need not be the only logical one nor even the best one." *Te'O*, 311 Fed. Appx. at 169 (quoting *Finley v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1176 (10th Cir. 2004)). It only needs to be grounded in a "reasonable basis." *Id.*; *Adamson*, 455 F.3d at 1212 (holding that a decision should be upheld where it "is predicated on a reasoned basis."). This conclusion requires only that the decision is "somewhere on the continuum of reasonableness—even if on the low end." Id. (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (internal quotations omitted)). Conversely, a decision to deny benefits is arbitrary and capricious if it is based on an unreasonable interpretation of plan terms, *McGraw v. Prudential Ins. Co. of America*, 137 F.3d 1253, 1259 (10th Cir. 1998), or ignores the language of an ERISA plan, *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 999-1000 (10th Cir. 2018). The parties dispute whether a *de novo* or an arbitrary and capricious standard or review is applicable to this claim, with plaintiff arguing that Premera has not carried its burden of showing that the governing plan documents provide Premera with discretionary authority.

6

The Microsoft Health Savings Plan at issue in this action contains language retaining for the plan administrator discretionary authority of the sort envisioned by the Supreme Court in *Firestone*. The Plan Instrument provides: "The Plan Administrator shall have...the sole discretionary authority to take the actions described in Section 5.2(a) and to interpret the provisions of the Plan and the facts and circumstances of claims for benefits...Benefits under this plan will be paid only if the Plan Administrator decides in his discretion that the claimant is entitled to them." Payton Decl., Ex. 1 at 13-14, Section 5.2(b). Despite this provision, Plaintiffs argue that neither the Plan Instrument retaining discretionary authority, nor the Administrative Services Agreement ("ASA") delegating that authority to Premera, are in the administrative record and thus cannot be considered by this Court in review. If true, the Court would be limited to the terms of the Summary Plan Description ("SPD"), the only plan document in the administrative record, which contains no terms incorporating itself into the governing plan document, nor does it contain language granting discretionary authority.

However, the governing plan documents need not be in the administrative record for purposes of determining the standard of review, and the parties may submit them to a reviewing court for purposes of determining the standard of review. *Weeks v. Unum Grp.*, 585 F. Supp. 2d 1305, 1314 (D. Utah 2008). "'The doctrine limiting review of ERISA claims to evidence before the plan administrator was developed to prevent federal courts from becoming "substitute plan administrators" and thus to serve ERISA's purpose of providing "a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously."'" *Id.* (quoting *Daniel*, 261 Fed. Appx. at 318–19 (quoting *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966, 967 (6th Cir. 1990)). "But 'this concern is not implicated in cases where the extraneous evidence

7

being offered goes to a question that was not, or could not have been, under consideration by the plan administrator.'" *Id.* (quoting *Daniel*, 261 Fed. Appx. at 318–19). Thus, the governing plan documents and the ASA may be considered by this Court, though submitted outside of the administrative record.

Plaintiffs further argue that even if language exists in a governing plan document conferring discretion on Microsoft, Premera has not carried its burden of showing that discretionary authority was delegated to Premera. They claim that any delegation to Premera did not preserve the discretionary authority because Premera is a non-fiduciary, and that any discretionary authority delegated was not disclosed to Plaintiffs. The Tenth Circuit has held that discretionary authority may properly be delegated by a fiduciary to a non-fiduciary agent while preserving the discretionary authority. From their opinion in *Geddes v. United Staffing Alliance Employee Medical Plan*:

> While we agree that an ERISA plan administrator must be a fiduciary ... there is nothing in the language of the ERISA statute ... that requires fiduciaries, when delegating authority, to delegate only to other fiduciaries. Indeed, we would go so far as to say that plain language of the ERISA statute and the venerable body of trust law say just the opposite. Decisions made by an independent, non-fiduciary third party at the behest of the fiduciary plan administrator are entitled to *Firestone* [*Tire and Rubber Co. v. Bruch*, 482 U.S. 101 (1989)] deference because the third parties act only as agents of the fiduciary. ... If a plan administrator has been allotted discretionary authority in the plan document, the decisions of both it and its agents are entitled to judicial deference.

*Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 927 (10th Cir. 2006) (citations omitted). *See also Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1129 (10th Cir. 2011); and *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 801 (10th Cir. 2004).

Thus, Plaintiffs' first argument is unavailing. With respect to Plaintiffs' second argument that there was insufficient notice to the claimants of the delegation of discretionary authority, Premera points out that the SPD makes abundantly clear that Premera is the claims administrator. When combined with the language from the governing plan document authorizing such a delegation, this puts Plaintiff on notice of the function of Premera as the delegate contemplated in the language of the governing plan document.

Next, Plaintiffs argue that even if an arbitrary and capricious standard were initially established by the plan documents, Premera violated ERISA claims procedure regulations, thus warranting *de novo* review. Specifically, they allege that Premera changed its denial rationale in response to Lyn and David's level one appeal, thereby abandoning the initial reasons for the denial. They also allege that Premera's explanation for its decision to award coverage for the first 10 days of L.M.'s stay at the academy was in conflict with the Plan. Finally, they allege that the second and third level reviews failed to correctly and specifically consider and apply the proper medical criteria required to be used by the Plan. The Court finds the claims procedure violations cited by Plaintiff to be either benign or inaccurately characterized, and in any event not rising to a level that justifies a more stringent standard of review.

Plaintiffs' allegation that Premera changed its denial rationale is only partially accurate. Premera points out in its response that the medical necessity criteria encompass two elements, namely "intensity of treatment" and "severity of illness." The level one denial was supported by a finding that the Academy did not meet the "intensity of treatment" requirement under the plan, and this basis is still applicable and valid. Further, Premera points out that while the stated basis of the second and third level denials was a failure to meet the "severity of illness" requirement,

this was in addition to, and not instead of, the original basis. These facts support the view that Premera's initial rationale was not abandoned in an opportunistic attempt to find another reason to deny benefits, because the original basis was still valid. Rather, as additional medical records were submitted by Plaintiffs the denial became more expansive, denying coverage not just for that particular treatment center, but for any 24/7 residential treatment center on the basis of the lack of severity of L.M.'s condition. This procedural path does little to suggest the standard of review should be heightened.

As for Premera's decision to compensate Plaintiffs for the first ten days of L.M.'s stay at the residential treatment center, Premera states this was done out of courtesy due to a delay in processing and there is little in the record to dispute this. Plaintiffs correctly note that compensation was not required for this reason under the Plan, as Premera was still well within the plan deadline for making a determination of benefits. Plaintiffs then ask the Court to infer that Premera must have initially approved the treatment center and later changed its decision. This inference is unwarranted, and also irrelevant to whether Plaintiffs should be compensated for the remainder of their stay. Further, it does not contribute to the presence of any shift in rationale for the denial of the remainder of L.M.'s stay, since it was not a denial. Thus, any change that might have occurred would not have interfered with Plaintiffs' ability to adequately prepare and respond to whatever basis for denial was ultimately given for the remaining time. The Court also concludes that the second and third level reviewers sufficiently considered and applied the medical criteria required to be used by the plan for evaluating whether L.M.'s treatment was medically necessary.

Where the arbitrary and capricious standard otherwise applies, *de novo* review is only appropriate if the administrator did not "substantially comply" with ERISA's requirements. *Hancock v. Metro Life Ins. Co.*, 590 F.3d 1141, 1152 (10th Cir. 2009) ("de novo review may be appropriate if the benefit-determination process did not substantially comply with ERISA regulations"). Taken together, all of Plaintiffs' alleged procedural regularities do not run afoul of the rule in the Tenth Circuit that a "plan administrator is in substantial compliance" if procedural irregularities were: "(1) 'inconsequential'; and (2) in the context of an on-going, good-faith exchange of information between the administrator and the claimant." *Finley v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan*, 379 F.3d 1168, 1173-74 (10th Circ. 2004) (quoting *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003)).

The remaining issue with the potential to effect the standard of review relates to the external independent review required under Washington law[1] and used by Premera. Plaintiffs assert that the benefits determination of an independent review organization ("IRO") is not eligible for a deferential standard of review. In support, they point to the fact that the SPD itself does not reserve discretionary authority to an IRO. However, as held above, this Court's review is not limited to the SPD in determining the standard of review, and the governing plan documents grant discretion to Microsoft and authorize the delegation of claims administration.

Plaintiffs also cite a case from the Western District of Washington finding that determinations by an IRO merit *de novo* review where the administrator's adoption and implementation of the IRO's decision was "mechanical and did not involve the exercise of discretion," which is what Washington state law requires. *K.F. ex rel. Fry v. Regence Blueshield*, No. C08-0890RSL, 2008 WL 4223613, at 2 (W.D. Wash. Sept. 10, 2008). However, the court's

---

[1] Revised Code of Washington (RCW) § 48.43.535.

holding in that case is anomalous and at odds with a more recent Ninth Circuit decision,[2] holdings in other circuits[3] and the logic of extensive case law making judicial deference a positive function of the independence (and thus absence of conflict) of the reviewing entity.[4] Finally, granting Plaintiffs' argument on this point would have the drastic effect of virtually eliminating the potential for *Firestone* deference anywhere in the United States because the Affordable Care Act now mandates an IRO review process for all health plans offered in the United States.[5] The Tenth Circuit has not spoken directly on this issue, but in light of the foregoing the better view is that an IRO determination strengthens, not weakens, the case for discretionary review.

Having fully considered both parties' arguments, the Court finds that Premera has carried its burden of establishing that it is entitled to an arbitrary and capricious standard of review. The merits of Plaintiffs' benefits claim can now be considered using that metric.

### B.     Lyn and David M.'s Claims

L.M. received treatment in the Eva Carlston Academy residential treatment center for fourteen months. Based on the plan documents, the administrator was obligated to pay benefits

---

[2] In *Yox v. Providence Health Plan*, 659 F. App'x 941 (9th Cir. 2016), the court held that Oregon's IRO requirement, at O.R.S. § 36.110(1), did not constitute an arbitration such that the Federal Arbitration Act barred judicial review of the IRO's decision. *Id.* at 943–44 (citing *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 382–83, 122 S. Ct. 2151 (2002)). Then, the Court went on to apply the abuse of discretion standard. *See id.*

[3] *See Estate of Larrimer v. Medical Mut. of Ohio*, No. 2:06–CV–0920, 2009 WL 1473981, at *9 (S.D. Ohio May 27, 2009) ("Where the plan administrator's decision enjoys the support of an independent review organization, 'it is sufficiently grounded to satisfy the "least demanding form of judicial review,"' the arbitrary and capricious standard.") (quoting *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 (6th Cir. 2000)).

[4] *See, e.g., Jennifer A. v. United Healthcare Ins. Co.*, No. CV 11–01813 DSF (PLAx), 2012 WL 3996877, at *8–9 (C.D. Cal. Sept. 11, 2012) (discussing the importance of conflict of interest in reviewing an ERISA plan's benefits determination).

[5] *See* 42 U.S.C. § 300gg-19(b) (mandating that group health plans and insurance issuers offering group or individual health insurance coverage implement an external review process); 29 C.F.R. § 2590.715-2719(c)(2)(vii)-(ix). *Group Health Plans and Health Insurance Issuers: Rules Relating to Internal Claims and Appeals and External Review Processes*, 76 Fed. Reg. 37,208, 37,210-11 (June 24, 2011) (codified at 45 C.F.R. pt. 147) (explaining the IRO process for self-insured plans).

for the related costs only if L.M.'s condition was such that continued confinement was medically necessary.[6] A plaintiff challenging a benefits decision under 29 U.S.C. § 1132(a)(1)(B) bears the burden of proving entitlement to benefits. *See Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1324 (10th Cir. 2009); s*ee also Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp.3d 1239 (D. Utah 2016). Thus, Plaintiffs must show that L.M.'s continued confinement at Eva Carlston Academy was medically necessary.

Under the Plan, a service or supply is medically necessary only if "[i]t is appropriate for the medical condition as specified in accordance with authoritative medical or scientific literature and generally accepted standards of medical practice."[7] The plan's Medical Policy document articulates the criteria to be used when assessing the need for psychiatric residential treatment, including for "severity of illness" and "intensity of service." It also includes criteria for when a continued stay is appropriate in psychiatric residential treatment. Pertinently, this section provides that a continued stay is medically necessary only if the following is satisfied for the patient:

> Significantly impaired functioning or behavioral dyscontrol continues to be present at a severity that requires 24/7 containment and treatment, or continued repetitive harm to self or others or active risk of harm to self or others continues to be present at a severity that requires 24/7 containment and treatment, or sufficient stabilization for partial hospitalization or outpatient treatment has still not occurred following step-down from inpatient treatment or treatment in a crisis stabilization facility. However, clinical progress must also be evident…

Dkt. No. 20-3, The Administrative Record, p. 97.

Plaintiffs argue that they have provided "abundant information" in L.M.'s medical record showing that L.M. could no longer function either at home or at school, and thus had mental

---

[6] Dkt. No. 20-3, The Administrative Record, p. 137; *Id.* at. 216.
[7] *Id.* at 183.

health symptoms that severely impaired her functioning. In support, they rely heavily on comments that they themselves have made, with hardly any reference to statements by a doctor, nurse or legal expert that supports the conclusion that as of April 1, 2015, L.M.'s condition significantly impaired her functioning at a severity requiring 24/7 containment.

The clinical medical records from Eva Carlston do not provide the needed support. For example, the "Reason for Admission" section of the "Master Treatment Plan" from the treatment center, dated April 5, 2015, recites L.M.'s history of difficult mental health issues.[8] Nowhere in this segment does it specify that she was currently engaging in suicidal ideation or at a risk of self-harm, or was experiencing significantly impaired functioning beyond problems with anxiety and self-esteem, issues which two independent medical experts have concluded do not meet the Medical Policy criteria for residential treatment.[9]

Another document generated by Eva Carlston titled "PSYCHIATRIC EVALUATION ADMITTING NOTE" includes a report of L.M.'s "History of Present Illness." This section recounts her mental health issues and her prior suicidal episode followed by an in-patient stay and outpatient follow-up care. Despite recounting L.M.'s past experience with suicide and self-harm, this history does not suggest that she was still at active risk of harm to self or others that required 24/7 containment as of April 1. The remaining reported issues, including that she "struggled with depression and anxiety and has not been able to attend school because of paralyzing anxiety," do not meet any of the applicable criteria for continued stay in a psychiatric residential treatment according to the reports of two independent medical experts.[10]

---

[8] *Id.* at 64.
[9] *Id.* at 45; *Id.* at 99.
[10] *Id.* at 45; *Id.* at 99.

Ultimately, Plaintiffs fail to point to any medical opinion in the record that supports the conclusion that L.M. had conditions satisfying any of the alternate criteria for a continued stay at a residential psychiatric center as of April 1, 2015. Plaintiffs have, therefore, failed to meet their burden of proof and the Court thereby concludes that L.M.'s condition was not such that continued confinement at Eva Carlston Academy was medically necessary. As a necessary result, Premera's determination that L.M. does not satisfy the Plan's medical necessity requirement is supported by "substantial evidence" and thus not arbitrary and capricious. Due to the foregoing conclusion, it is unnecessary to address Premera's alternative "intensity of service" basis for denying coverage.

### III. Conclusion

For the reasons provided above, the court orders that Defendant's summary judgment motion is GRANTED and Plaintiffs' action is DISMISSED WITH PREJUDICE.

Let judgment be entered accordingly.

DATED this 23 day of May, 2018.

Bruce S. Jenkins
United States Senior District Judge