IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LYN M., and DAVID M., as Legal Guardians of L.M., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>PREMERA BLUE CROSS, and MICROSOFT CORPORATION WELFARE PLAN,<br><br>Defendants. | **MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>Case No. 2:17-cv-01152-BSJ<br><br>District Judge Bruce S. Jenkins |

This matter is before the court after being remanded by the Tenth Circuit. Plaintiffs' Motion for Summary Judgment[1] and Defendants' Motion for Summary Judgment[2] came before the court on September 23, 2021. Mr. Brian King appeared on behalf of Plaintiffs Lyn M. and David M. as legal guardians of L.M., and Ms. Gwendolyn Payton appeared on behalf of Defendant Premera. Defendants filed their post-appeal Motion for Summary Judgment on July 15, 2021, and Plaintiffs filed their post-appeal Motion for Summary Judgment on July 26, 2021. At the September 23, 2021 hearing, the court heard oral arguments on the motions and took the matter under advisement.

Having considered the parties' briefs, the evidence presented, the oral arguments, the relevant law, the full record in this matter, as well as the opinion of the Tenth Circuit, the Court

---

[1] ECF No. 71.
[2] ECF No. 67.

GRANTS the Plaintiffs' Motion for Summary Judgment[3] and DENIES the Defendants' Motion for Summary Judgment.[4]

## BACKGROUND

This is a case regarding the denial of insurance coverage under an ERISA health insurance plan for L.M.'s fourteen-month stay at Eva Carlston Academy, a residential treatment center in Salt Lake County Utah.[5] Costs of the stay exceed $80,000.[6]

### I. L.M.'s History

L.M. has suffered from mental health problems since she was a young child. Throughout her childhood and into adolescence, she experienced depressive symptoms, anxiety and panic attacks, suicidal ideation, a suicide attempt, and self-harm problems.[7] She has also experienced struggles with focusing, attending school, and relating to her peers.[8] All of these symptoms resulted in L.M. attending therapy since she was eight years old and taking a variety of prescription medications to cope with her recurring mental illness.[9]

L.M.'s therapist alerted her parents that L.M. was planning a suicide attempt, and she was subsequently placed on suicide watch in an acute in-patient mental health facility for four days, followed by a two-week outpatient program.[10] A few months later when L.M. was still exhibiting serious mental health struggles, her parents placed her in Eva Carlston Academy, a long-term residential treatment facility for psychiatric care in Salt Lake County, Utah.[11] She was admitted

---

[3] ECF No. 71.
[4] ECF No. 67.
[5] ECF No. 71.
[6] ECF No. 2.
[7] ECF No. 71.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

2

on March 21, 2015 and stayed at Eva Carlston for around fourteen months, showing some improvement during her stay.[12]

## II. Pre-Litigation Claims Process

L.M.'s parents submitted claims to Premera, the claims administrator of the ERISA insurance plan, for the psychiatric residential treatment L.M. was receiving at Eva Carlston.[13] Premera partially denied the claim on March 31, 2015 on the basis that the treatment was not medically necessary.[14] Premera cited the fact that L.M. was only evaluated once a month by a psychiatrist, while her "treatment guidelines"[15] required that she be evaluated at least once every seven days.[16] Premera did, however, approve L.M.'s first ten days of treatment—Premera claimed to have experienced "internal delays" and approved the initial period as a courtesy.[17] L.M.'s parents appealed the denial of coverage and were subsequently denied on the basis that L.M. was not exhibiting ongoing suicidal or homicidal ideation or a risk of self-harm sufficient to justify around-the-clock residential care.[18]

On September 27, 2016, L.M.'s parents filed an appeal for external review.[19] On October 24, 2016, the National Medical Reviews ("NMR"), an external review organization, affirmed the denial of care based on the lack of documented suicidal or harmful behavior.[20]

Having exhausted their administrative appeals, L.M.'s parents brought an action for over $80,000 against Premera under ERISA provision 29 U.S.C. § 1132(a)(1)(B).[21] Both parties

---

[12] ECF No. 71.
[13] ECF No. 2.
[14] *Id.*
[15] R. 469.
[16] ECF No. 67.
[17] R. at 931.
[18] ECF No. 71.
[19] ECF No. 2.
[20] *Id.*
[21] *Id.*

3

moved for summary judgment, and this Court granted summary judgment to Premera applying the arbitrary-and-capricious standard of review.[22]

### III. Tenth Circuit Reversal

The Tenth Circuit reversed, noting two errors. *Lyn M. v. Premera Blue Cross*, 966 F.3d 1061 (10th Cir. 2020). First, the Tenth Circuit held that the correct standard of review for this case was de novo, as opposed to the arbitrary and capricious standard applied previously. Premera had argued before this court and the Tenth Circuit that a document referred to as the "Plan Instrument" had reserved discretion on behalf of the Plan Administrator to interpret the documents and determine whether coverage applied, which triggered the arbitrary and capricious standard of review at the district court level.[23] The Tenth Circuit determined that Premera had not disclosed the existence of the Plan Instrument to its members and instead "supplied a summary plan description, which members would ordinarily regard as their primary source of information about the plan." *Id.* at 1067. The court found that members "could not be bound to terms of [a] policy of which [they] had no notice," and therefore the Plan Instrument could not affect the members rights to coverage or the standard of review they received in court. *Id.* (quoting *Member Servs. Life Ins. Co. v. Am. Nat. Bank & Tr. Co. of Sapulpa*, 130 F.3d 950, 955 (10th Cir. 1997) (internal quotation marks omitted)). This document has not been included in the administrative record currently before this Court and neither party desired to supplement the record; accordingly, the Plan Instrument is not before the court.[24]

---

[22] ECF No. 45.
[23] ECF No. 28.
[24] Mot. Hr'g Tr. at 3, 14.

4

Second, the Tenth Circuit articulated that a determination of medical necessity must be based on both the Summary Plan Description[25]—the document that contained general criteria about coverage—and the specific criteria found in the document titled "Behavioral Health: Psychiatric Residential Treatment 3.01.508"[26] ("Medical Policy"), and therefore the court must consider the claim under the authority of both documents. *Id.* at 1068. The Tenth Circuit remanded the case to this court to review under a de novo standard and in light of the criteria contained within the Summary Plan Description and the Medical Policy documents.

Both parties now move for summary judgment.[27]

## ANALYSIS

### I. Standard of Review for Denial of Benefits

The Tenth Circuit has instructed that the court apply a de novo standard of review to this denial of benefits claim. When applying a de novo standard to an ERISA denial of benefits claim, "[t]he administrator's decision is accorded no deference or presumption of correctness." *Niles v. Am. Airlines, Inc.*, 269 F. App'x 827, 832 (10th Cir. 2008) (internal quotation marks and citation omitted). Instead, the dispositive question is "whether the plaintiff's claim for benefits is supported by a preponderance of the evidence based on the district court's independent review." *Id.* at 833. Accordingly, the court is not required to decide "whether 'substantial evidence' or 'some evidence' supported the administrator's decision," only "whether the plaintiff's claim for benefits is supported by a preponderance of evidence based on the [ ] court's independent review." *Carlile v. Reliance Standard Insurance Co.*, 385 F.Supp.3d 1180, 1185 (D. Utah 2019) (quoting *Niles*, 269 F. App'x at 833).

---

[25] R. 579-737.
[26] R. 567-577.
[27] ECF. No. 67, 71.

5

Ordinarily, the Tenth Circuit has concluded that "the best way for a district court to implement ERISA's purposes in this context is ordinarily to restrict de novo review to the administrative record," instead of adding more evidence after the administrative appeals process has concluded. *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1308 (10th Cir. 2007) (internal quotation marks and citation omitted). In this case, the Tenth Circuit has indicated that additional evidence may be appropriate. *Premera Blue Cross.*, 966 F.3d at 1070. However, both parties have indicated that they do not wish to supplement the record, and thus the court will consider it as is.[28]

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When both parties move for summary judgment on an ERISA denial of benefits claim, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (internal quotation marks and citation omitted).

## III. Denial of Benefits

Based on the Summary Plan Description and the Medical Policy, L.M. is entitled to coverage under her insurance plan if L.M.'s condition justified the level of care she was being provided, rendering it medically necessary. A plaintiff challenging a benefits denial under 29 U.S.C. § 1132(a)(1)(b) bears the burden of establishing that they were entitled to receive

---

[28] Mot. Hr'g Tr. at 3, 14.

6

benefits. *See Rasenack ex rel. Tribolet v. AIG Life Ins.Co.*, 585 F.3d 1311, 1324 (10th Cir. 2009) ("[T]he insured ultimately carries the burden of showing he is entitled to benefits. . ."). The Plaintiffs in this case must accordingly establish, by a preponderance of the evidence, that they were entitled to coverage under the Summary Plan Description's general criteria for medical necessity and the Medical Policy's specific criteria for L.M.'s treatment at Eva Carlston Academy.

"[W]hen reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record. . ." *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007) (abrogated on other grounds). Accordingly, only the specific rationales that were articulated in the pre-litigation appeal process documented by the administrative record will be considered when reviewing a claim denial. *Id.* This rule serves two important purposes. First, it prevents ERISA claimants from being "sandbagged by after-the-fact plan interpretations devised for purposes of litigation." *Id.* at 1191 (quoting *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998)). Second, it conversely protects against a claimant bringing new grounds to award benefits outside of the administrative record. *Id.* (citing *Sandoval v. Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 381 (10th Cir. 1992)).

Plaintiffs allege that L.M.'s treatment was medically necessary under the Summary Plan Description and the Medical Policy. Under the Summary Plan Description, which is the document the Tenth Circuit determined that Premera exclusively relied upon in their ultimate denial of L.M.'s coverage, a service or supply is medically necessary if "[i]t is appropriate for the medical condition as specified in accordance with authoritative medical or scientific literature

7

and generally accepted standards of medical practice."[29] The Medical Policy gives more specific criteria by which to guide the assessment of both admission to and continued stay at a psychiatric residential treatment facility. The two main categories of criteria for evaluation are "severity of illness" and "intensity of service."[30]

A. Intensity of Service Criteria

Premera argues that they provided consistent bases for the denial of L.M.'s claim throughout the prelitigation appeals process and into litigation. In their initial denial of L.M.'s claim on March 31, 2015, Premera wrote that residential treatment for mental health is medically necessary only if a psychiatrist evaluates the patient once every seven days and the individual is also receiving weekly individual therapy.[31] This letter reads, in relevant part:

> The treatment guidelines used by your health plan state that, in addition to other requirements, continued residential treatment to treat a mental health condition is medically necessary only when the following are present:
> - A psychiatrist is in charge of your treatment and evaluates you in-person at least once every seven days; and
> - You are receiving weekly individual therapy
>
> The information that your provider gave to your health plan shows that the psychiatrist in charge of your treatment evaluates you in-person once a month, not once every seven days. The information also shows that you are receiving individual therapy every other week, not weekly. Therefore, mental health residential treatment is denied as not medically necessary after 3/30/15.[32]

This denial fits squarely within the "intensity of service" criteria of the Medical Policy.

Yet, following Lyn M.'s Level One appeal of her daughter's claim dated April 19, 2016, Premera failed to raise an issue with the intensity of service at Eva Carlston. In their subsequent June 3, 2016 denial of L.M.'s treatment at Eva Carlston Academy, they focused on the fact that

---

[29] R. at 649.
[30] R. at 563, 565.
[31] R. at 66.
[32] *Id.*

8

there was "no documented evidence of ongoing suicidal or homicidal ideation, self-injury, psychosis, or severe difficulties in self-care."[33] This rationale for denial falls within the "severity of illness" criteria of the Medical Policy.

Premera argues that these rationales are in fact not inconsistent, but rather represent an expansion of their initial basis for denial having been provided new evidence. However, in the same letter dated June 3, 2016 denying Lyn M.'s appeal, Premera effectively abandons the intensity of service argument altogether when they write:

> [The] letter of appeal states that the reasons for denial were that the provider was not meeting the required qualifications and that the residential program was not providing treatment of a frequency that met the plan criteria. However, these issues are not relevant in the context of the medical necessity of the residential treatment at this time, as it is the absence of severe mental health symptoms in the documentation which supports upholding the denial.[34]

The goals of ERISA to provide for a full and meaningful dialogue between the provider and the insured during the prelitigation appeals process "are undermined where plan administrators have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary." *Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1140 (10th Cir 2012). Tenth Circuit law forbids plan administrators from making new arguments before the Court that were not articulated in the administrative record. *Id.* Although Premera did raise the intensity of service criteria as the basis for denial in their initial denial of benefits on March 31, 2015, they effectively abandoned the rationale throughout the rest of the administrative appeals process. It would be an unfair "sandbagging" of the Plaintiffs to allow Premera to resurrect this argument long after it was abandoned in the meaningful dialogue between the provider and the insured. *See*

---

[33] R. at 931.
[34] R. at 932.

*also Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F.Supp.3d 1159, 1172 (D. Utah 2019) (Parrish, J.) (determining that a plaintiff was not prejudiced by an abandoned rationale for denial by a claim administrator only because the claim administrator did not raise that argument in court). Accordingly, Premera's argument that Plaintiffs did not meet the medically necessary standard on this basis is unavailing, as they previously abandoned this argument in June of 2016 by concluding that the intensity of service criteria was not relevant.

B. <u>Severity of Illness Criteria</u>

The remaining rationale articulated by Premera as the basis for denying L.M.'s claim is that she did not exhibit severe enough symptoms to justify the level of care she received, which falls within the "severity of illness" criteria of the Medical Policy. This, too, is unpersuasive.

Plaintiffs argue that they have provided sufficient evidence to satisfy that L.M. was entitled to residential treatment under the Summary Plan Description and Medical Policy by a preponderance of the evidence. To that end, they argue that they have provided sufficient evidence to show that L.M.'s treatment was "medically necessary" as contemplated by the Summary Plan Description and the Medical Policy. This requires comparing the Plaintiffs' medical records describing her treatment with the requirements of the Medical Policy.

The Medical Policy articulates several criteria in the severity of illness category for admission into residential treatment for psychiatric illness. Plaintiffs argue that L.M. falls into subsection (a) of these criteria:

> a. One or more severe psychiatric disorders of several months or longer duration, causing significantly impaired functioning or behavioral dyscontrol that has been sustained over several months or longer, with failure to respond to less restrictive and intensive treatment interventions, or with escalation to the point that less restrictive and intensive treatment interventions are not likely to be successful.[35]

---

[35] R. at 562.

10

The initial evaluation performed by Eva Carlston indicates that L.M. was suffering a "severe psychiatric disorder[] of several months or longer." In the document titled "EVA CARLSTON ACADEMY PSYCHIATRIC EVALUATION/ADMITTING NOTE,"[36] the admitting doctor Dr. Kirk Simon noted that L.M. had a history of suicidal thoughts and that she was "last having suicidal thoughts 2 days ago," alongside other mental health issues, on April 1, 2015.[37]

Lyn M. also raised the point in her Level One Appeal on April 19, 2016 that Premera approved L.M.'s initial twelve days of treatment she received from March 20-31, 2015, indicating that Premera had fully vetted the facility as a provider and agreed with the assessment conducted by Dr. Simon that L.M. needed treatment.[38] Premera responded on June 3, 2016 that they had granted coverage for the initial period of L.M.'s treatment due to "internal delays" that had occurred, not because they were medically necessary.[39] While Premera argues a mistake occurred internally and the initial twelve days were covered as a courtesy, they ignore the opinion of the doctor who concluded L.M. was in fact in need of residential treatment at the facility. Plaintiffs have accordingly provided sufficient evidence that they were entitled to benefits at the time of admission on March 21, 2015.[40]

The Medical Policy further requires that an individual receiving residential treatment exhibit "significantly impaired functioning" to qualify for a continued stay, which can include "active risk of harm to self or others" at a level that justifies 24/7 containment.[41] Plaintiffs point to L.M.'s medical records from Eva Carlston as evidence of L.M. being significantly impaired,

---

[36] R. 555-558.
[37] R. at 555.
[38] R. at 55.
[39] R. at 931.
[40] R. at 530.
[41] R. at 563.

11

which indicate that L.M. was still actively having suicidal thoughts well into her stay at the Eva Carlston facility.[42] In her Psychiatric Evaluation by Dr. Simon performed on April 1, 2015, Dr. Simon indicated that L.M. "was last having suicidal thoughts 2 days ago," nine days after admission, and "get[s] images of self-harm caught in her head."[43] L.M.'s treatment notes from Eva Carlston note that she was suffering with suicidal thoughts on August 5, 2015, nearly six months into her stay at the facility.[44]

The Medical Policy does not provide a definition for what is meant by "significantly impaired functioning," but it follows that an individual who is having suicidal thoughts six months into her intensive residential care and has a history of suicidal problems and self-harm dating back to when she was eight years old poses a risk of engaging in self harm in the future. Given her history of suicide attempts and continued suicidal ideation, Plaintiffs have provided evidence that L.M. was still an active risk of harm to herself while staying at Eva Carlston. Given that neither party wished to supplement the record, the court must decide on the evidence that, after nearly half a year of the intensive treatment L.M. was receiving at Eva Carlston, she experienced a relapse into suicidal thoughts, indicating that, even then, she posed a substantial risk to herself. Without evidence to the contrary, Plaintiffs have provided uncontradicted evidence that tends to show they were entitled to benefits under the Summary Plan Description and the Medical Policy.

C. Independent Evaluations

Premera argues that two independent medical evaluators determined that L.M.'s stay at the facility was not covered by the Summary Plan Description and the Medical Policy. This

---

[42] R. at 532.
[43] R. at 555.
[44] R. at 532.

12

argument is unavailing. First, following the Level One appeal by Lyn M. in April of 2016, Premera gave direct instruction to Dr. Paul Hartman, the independent doctor in question, not to base his decision on the Medical Policy. Specifically, on May 24, 2016 they informed him that "[t]he medical policy titled: Behavioral Health: Psychiatric Residential Treatment 3.01.508 is included with this review, but should not be used as the basis for the determination of this review."[45] This was procedurally irregular and should not be the basis for a denial of a claim that is governed by the Medical Policy alongside the Summary Plan Description. This was a blatant disregard for the criteria by which coverage is evaluated, and the Tenth Circuit pointed this out as an evidentiary error to be remedied by this Court. *Premera Blue Cross*, 966 F.3d n.11.

Second, the Independent Review performed by the NMR physician reviewer on October 24, 2016 indicated that L.M. had not experienced suicidal symptoms since her admission to Eva Carlston, which was the basis of Premera's denial of L.M.'s claim of medical necessity.[46] This is directly contradicted by the medical records provided by Eva Carlston, which indicate at least two episodes of suicidal thoughts after L.M. was admitted to the facility on March 30, 2015 and August 5, 2015.[47] Moreover, it is not clear to the extent that the NMR evaluator consulted the Medical Policy in making the decision about L.M.'s severity of symptoms.

In this appeals process, Premera failed to provide "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances" as required by 29 C.F.R. Section 2560.503-1(g)(1)(v)(B). Premera gave explicit directions to Dr. Hartman not to base his decision on the terms of the Medical Policy, and the NMR evaluator ignored the evidence of suicidal ideation during her stay and thus failed to apply

---

[45] R. at 101.
[46] R. at 743.
[47] R. at 532, 555.

13

Medical Policy criteria to her medical circumstances. Further, both Dr. Hartman and the reviewing doctor for the NMR appeal indicate that the primary reason for denying L.M.'s coverage for treatment was a lack of ongoing suicidal ideation. The question then remains whether L.M. did have ongoing suicidal thoughts, and the medical records reflect that she did. The greater weight of the evidence therefore supports the Plaintiffs' position that L.M.'s treatment was medically necessary.

D. Plaintiffs Met Their Burden

Accordingly, Plaintiffs have provided sufficient evidence to show that, by a preponderance of the evidence, they were entitled to benefits under the Summary Plan Description and the Medical Policy.

## CONCLUSION

For the reasons provided above, the court orders that Plaintiffs' summary judgment motion[48] is GRANTED and Defendants' motion[49] is DISMISSED WITH PREJUDICE. Counsel for the Plaintiffs shall prepare and submit a form of judgment complying herewith within 10 days.

DATED this 30th day of November, 2021.

Bruce S. Jenkins
United States Senior District Judge

---

[48] ECF No. 71.
[49] ECF No. 67.